# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1410 | **DATE** | 11/5/2001 |
| **CASE TITLE** | Carl Gladney vs. Social Security Administration | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The Commissioner's motion for summary judgment [26-1] is granted, and Gladney's motion for summary judgment is denied [21-1]. Judgment is to be entered for the Commissioner on all counts. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 07 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 30 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 NOV -6 PM 12: 14 | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARL GLADNEY,           )
                        )
        Plaintiff,      )
                        )   Case No. 00 CV 1410
v.                      )
                        )   Judge Wayne R. Andersen
SOCIAL SECURITY         )
ADMINISTRATION,         )
                        )
        Defendant.      )

## **MEMORANDUM, OPINION AND ORDER**

This case is before the Court on plaintiff Carl Gladney's request for judicial review of the decision by defendant Commissioner of the Social Security Administration ("Commissioner") to deny plaintiff social security disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g). Both Gladney and the Commissioner have moved for summary judgment. For the following reasons, we grant the Commissioner's motion and deny Gladney's motion.

### BACKGROUND

Carl Gladney is a 42 years old man with a high school degree. After high school, he attended the Memphis Skill Center to become an auto mechanic. Following that training, he worked as an auto mechanic for three to four months. He then held a variety of different positions, rarely for more than four months at any one location. Many of these positions required physical labor such as lifting televisions or loading and unloading soft drinks. He



also had several jobs assembling, among other things, ladders, furniture, and airplane seat covers.

In 1992 he suffered a head injury during a prison assault. The record does not clearly state why Gladney was in prison. At the time, doctors at the Regional Medical Center in Memphis, Tennessee examined him and found no evidence of acute fracture or dislocation. The Center prescribed Ibuprofen to relieve his pain. He also spent some time in the psychiatric unit at the prison after the attack, although the exact reason why is unclear. The prison medical records are not included in the record and Gladney's explanations have been inconsistent.

After his release from prison, he was employed in a series of short-term jobs until 1995. On April 27, 1995, Gladney injured his back lifting televisions while employed by Zenith and he has not worked since. He received treatment for his back injury at the Taylor-Ogden Medical Center in Chicago from May 1995 through August 1995. The Center concluded that Gladney suffered a lower back sprain/strain, pain in his right leg, and a right big toe sprain. These injuries prevented him from returning to work in June 1995. The examining doctor prescribed Darvocet-N 100 and concluded that Gladney "may need to seek care and evaluation in the future."

On May 15, 1995 Gladney filed his application for disability benefits with the Social Security Administration ("SSA") based on injuries from both the prison assault in 1992 and the work-related injury in 1995. In his application, he stated that his disability began in 1992 although he continued to work until 1995. Thereafter, Gladney became a regular patient in the offices of different orthopedic specialists and psychiatrists. In May 1995, Dr. Panapio, a medical consultant for the Social Security Administration, examined Gladney at the

2

request of the Illinois Bureau of Disability. The doctor did not review any of Gladney's previous medical records, but she nonetheless observed no abnormal posture or paraspinal muscle spasm and concluded that Gladney voluntarily restricted his lumbar spine. She also concluded that tension caused Gladney's headaches. An x-ray of Gladney's back showed a normal vertebral alignment and normal disc spaces. No fracture or arthritis was observed. Subsequently, based on Dr Panapio's examination, the Commissioner denied Gladney's claim for disability benefits.

Undeterred, Gladney filed a request for reconsideration in June 1995. The SSA then had two psychiatrists examine Gladney to determine if he was disabled. Dr. O'Donnell conducted a psychiatric examination in July 1995. The doctor noted that Gladney admitted he was an alcoholic and drug user. Gladney also told Dr. O'Donnell that he was in the psychiatric unit of the prison in 1992 because he could not get along with anyone. However, he later denied this at his 1999 hearing before an Administrative Law Judge ("ALJ"). Dr. O'Donnell also believed that Gladney's headaches were tension headaches, apparently unrelated to the prison assault. He concluded that Gladney's mental prognosis was guarded or poor.

In August 1995, Dr. Kuester, another SSA medical consultant, concluded that a Mental Residual Functional Capacity Assessment was necessary because of Gladney's substance addictions. In the Mental RFC Assessment, Dr. Kuester determined that, in general, Gladney's mental activities were not significantly limited. Dr. Kuester concluded that Gladney was only moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and work week without interruptions from

3

psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public was moderately limited. Based on these additional examinations, the Commissioner affirmed the original decision to deny Gladney disability benefits.

In the fall of 1995, Gladney filed a timely request for a hearing before an ALJ, claiming that physical injuries prevented him from working. In his filing, he requested a lawyer and indicated that he did not want to attend the hearing because he was "too emotional." In a decision dated November 22, 1996, the ALJ found that substance dependence was a contributing factor material to the determination of disability and concluded that Gladney would not be disabled if he ceased using drugs or alcohol. Because Gladney moved prior to the hearing, the ALJ was unable to notify him and he did not appear at the hearing. The appeals council then denied his request for review of the ALJ decision, rendering the ALJ's decision final. 20 C.F.R § 404.955.

Steadfast, Gladney then filed an appeal of the Commissioner's decision with this Court. In April 1998, Judge Kocoras granted the Commissioner's Motion to Remand. The Court reversed the Commissioner's decision and remanded the case to the agency for additional proceedings. The Court ordered the ALJ to obtain consultative orthopedic and mental status examinations with psychological testing and functional assessments. In addition, the Court ordered the ALJ to obtain updated medical reports and provide Gladney with the opportunity to submit additional evidence and testify at a supplemental hearing. The Court also ordered the ALJ to obtain the testimony of a vocational expert, if warranted.

On remand, the appeals council then vacated the final decision of the Commissioner and remanded the case to the ALJ for a new proceeding. Prior to the new hearing, Gladney

4

underwent new physical and psychiatric examinations by SSA medical consultants in March 1999. Dr. Smith performed the physical examination of Gladney. During the examination, Gladney stated that he took several medications for pain, depression, and allergies. Gladney's range of motion was limited and Dr. Smith observed subjective back pain, but no scars, atrophy or swelling. The doctor concluded that Gladney could occasionally lift 35 pounds and frequently lift 25 pounds. Standing, walking and sitting were not affected by his impairment. Dr. Smith also noted that Gladney had a sinus condition that made breathing difficult at times. These breathing difficulties limited Gladney's ability to work around dust, fumes, or humidity. Although Gladney informed Dr. Smith that he had stopped drinking and denied using drugs, the doctor also concluded that Gladney should avoid heights or moving machinery given his history of alcohol and drug abuse.

Dr. Neufeld conducted the consultative psychiatric evaluation of Gladney in March 1999. An IQ test showed that Gladney had borderline functioning but had average immediate recall memory. Dr. Neufeld concluded that Gladney suffered from both an adjustment disorder with depressed mood and an avoidant personality disorder. In addition, Dr Neufeld noted that Gladney seemed "able to engage in physically non-demanding unskilled to semi-skilled labor and could manage his own funds."

During the ongoing appeals process, Gladney's medical visits were not limited to SSA consultants. From August 1995 through December 1998, Gladney visited the Cook County Hospital and Fantus Clinic several times. These visits document his continued and consistent complaints of back pain and occasional headaches. During one visit Gladney told the examining doctor that Motrin helped alleviate his back pain more than Tylenol. During

another visit, Gladney stated that the physical therapy exercises designed to strengthen his back caused discomfort and he was no longer going to continue the exercises.

On May 13, 1999, the ALJ who conducted Gladney's first disability benefits hearing held another hearing at which Gladney, vocational expert Dr. Richard Hamersma, orthopedic specialist Dr. William Newman, and psychiatrist Dr. Robert Edgar testified. Dr. Newman testified after reviewing the relevant records in the exhibit file. He stated that Gladney's physical impairments included obesity, but he concluded that Gladney had no physical problems severe enough to meet a listed impairment. After a review of the medical record, Dr. Newman was unable to determine the reason for Gladney's back pain. He also stated that he believed Gladney could occasionally lift fifty pounds.

After reviewing the psychiatric record, Dr. Edgar did not accept Dr. Neufeld's earlier assessment that Gladney had an adjustment disorder because Dr. Neufeld's report did not indicate what Gladney had difficulty adjusting to. Dr. Neufeld also did not believe the record was complete, primarily because it did not contain records from the prison psychiatric unit. Gladney testified that he had the necessary papers from the prison but was unable to find them. Nonetheless, Dr. Edgar concluded that Gladney did not have a mental ailment or significant cognitive impairment based on the existing record.

Based on the examinations conducted by Dr. Smith and Dr. Neufeld, Dr. Hamersma concluded that Gladney could perform numerous jobs in the local economy, even if he was unable to continue in his previous line of work. Dr. Hamersma testified that all of the potential jobs would be unskilled, light work. Specifically, he determined that Gladney could work as a small parts assembler, inspector or hand packager. According to Dr. Hamersma, a total of 21,500 of these positions exist in the Chicago metropolitan area. Dr.

Hamersma also testified that Gladney could be a cashier, hand packager, or assembler if he could only work in a sedentary position. A total of 17,000 jobs meet these criteria. If Gladney suffered from pain that affected his ability to concentrate for up to five percent of the workday, Dr. Hamersma testified that it would not affect the possible job opportunities. If Gladney suffered from pain interference ten percent of the day, he could not be a cashier or assembler. If Gladney's pain exceeded ten percent of the day, he would be unable to work.

At the second hearing before the ALJ, Gladney testified that he suffered from back pain every day. Generally, Motrin helped alleviate the back pain. He also stated that he had occasional headaches and pain in his right foot stemming from an ingrown toenail. Sinus and allergy medications seemed to alleviate Gladney's headaches. He also stated that he could lift "maybe fifty pounds, maybe less." According to Gladney, standing more than fifteen minutes or sitting for more than twenty to thirty minutes aggravated his back pain. In documents submitted to this Court, he also claims to be diabetic and suffer from arthritis.

After hearing the testimony of Gladney and the medical consultants and reviewing the medical record, the ALJ determined that Gladney was not disabled and denied his application. The Appeals Council again declined to assume jurisdiction over the case, rendering the ALJ's decision final. See 20 C.F.R. § 404.955. Gladney now seeks review before this Court.

## DISCUSSION

I. **Standard of Review**

Judicial review of the Commissioner's final decision is limited. "The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall

7

be conclusive." 42 U.S.C. § 405(g). Substantial evidence in this context means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A District Court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. See Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). A court must affirm the Commissioner's decision if the decision is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. 42 U.S.C. § 405(g); see also Wolfe v. Shalala, 997 F.2d 321, 326 (7th Cir. 1993). The ALJ does have a duty to develop a full and fair record. See Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir. 1991). The ALJ must also consider all relevant evidence and may not select and discuss only that evidence that favors his or her ultimate conclusion. See Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir. 2001). Because the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Gladney's request for review pursuant to 20 C.F.R. § 498.222, this Court's review is based on the determinations of the ALJ. See Wolfe, 997 F.2d at 322.

## II. Summary Judgment Standard

With respect to the pending cross-motions, summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party meets this burden, the non-movant must then respond by setting forth specific facts that demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). The court must consider the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. Bay

v. Cassens Transport, Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III. "Disability" under the Social Security Act

To qualify for disability benefits under the Social Security Act ("the Act"), a claimant must be disabled within the meaning of the statute. The Act defines a disabled person as one who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment that makes him unable to perform his "previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. The Act requires the fact finder to follow a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). Once the claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment. If a claimant satisfies steps one and two, but not three, then the claimant must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to satisfy step five. See Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

In this case, the ALJ determined Gladney had not worked since 1995 (step one) and had at least one severe impairment (step two). The ALJ concluded, however, that Gladney's impairments were not consistent with an impairment listed by the Commissioner (step three). Although the ALJ concluded that Gladney could not perform the heavy tasks of his old positions (step four), she concluded that he could perform other work in the economy (step five). This Court's task is to determine if the ALJ's conclusions are supported by substantial evidence in the record.

Once the ALJ determined that Gladney suffered from a severe impairment and could no longer perform his past work, the Commissioner had the burden to establish that Gladney could perform other work. See Knight, 55 F.3d at 313. The ALJ believed that the Commissioner met this burden through the introduction of medical records from several doctors, clinics and hospitals, the testimony of additional consultants, and Gladney's own testimony.

Despite this volume of evidence, however, Gladney continues to dispute the ALJ's finding that he is not disabled. He apparently supports his position that the ALJ's decision was not based on substantial evidence with a subjective description of the pain he has experienced along with additional documentation filed with this Court. He does not argue that the ALJ failed to consider all of his evidence, nor does he argue that the conclusions of the testifying experts and examining doctors are unfounded. Interestingly, he was also unable to produce any doctor who would testify that he was completely unable to work.

Nonetheless, the record does reflect that Gladney suffered an impairment that could reasonably be expected to produce *some* pain. As the Seventh Circuit has noted, if "the intensity or persistence of the pain is unsubstantiated by the medical record, the ALJ is

obliged to examine and weigh all the evidence including observation by treating and examining physicians, third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain medication taken, and aggravating or precipitation factors to evaluate how much the claimant's impairment affects his ability to work." Herron v. Shalala, 19 F.3d 329, 334 (7th Cir. 1994); see also 20 C.F.R. § 404.1529.

In reaching her ultimate decision, the ALJ held a hearing at which she conducted a thorough analysis of the existing medical records. The record reveals that she reviewed and weighed the medical reports of at least two orthopedic specialists, three hospitals and clinics, and three psychiatrists. None of the doctors' statements in the medical reports established that Gladney's pain was completely debilitating. The ALJ also heard testimony from Gladney and three medical experts who independently examined the medical evidence. Dr. Newman reviewed the relevant medical records and examinations by other doctors and concluded that the evidence showed Gladney could perform light work, even if he could not perform his past work. Gladney himself testified that he might be able to occasionally lift fifty pounds. In addition, the medical record revealed his statements that Motrin helped alleviate his pain when his back was troubling him.

The ALJ even acknowledged that she gave significant weight to Gladney's testimony that he suffered pain from his injuries. In fact, she took the analysis one step further by directly asking the vocational expert, Dr. Hamersma, whether pain that interfered with the ability to concentrate would affect the number of jobs Gladney could perform. Dr. Hamersma replied that a person could perform thousands of jobs even if that person suffered from pain that interfered with the ability to concentrate for up to ten percent of the day. Consequently, after reviewing Gladney's testimony, the testimony offered by the medical

11

and vocational experts, and the voluminous record, the ALJ concluded that substantial, if not overwhelming, evidence established that Gladney did not suffer from pain for more than ten percent of the day and therefore he was not disabled and not entitled to disability benefits. We agree with the ALJ's conclusions.

Gladney's continuing argument that he is entitled to disability benefits because he is still experiencing pain fails to raise a genuine issue of material fact that the ALJ did not base her decision on substantial evidence. She considered his subjective pain at the hearing but found quite reasonably that the overwhelming weight of the evidence favored the conclusion that Gladney could perform light work. Even when some evidence may support the claimant's position, this Court must affirm the Commissioner's decision if the decision is reasonably drawn from the record and is supported by substantial evidence. See Wolfe, 997 F.2d at 326. Accordingly, summary judgment will be granted in favor of the Commissioner.

## IV. Additional Submissions to this Court

Gladney submitted many new documents to this Court in which he continues to state that he has back pain, headaches, foot pain, and now diabetes and arthritis, which prevent him from holding any job. He also submitted names of doctors and clinics that allegedly would confirm his story, but he has not produced any medical records or sworn affidavits that would be admissible at trial. Finally, he recently submitted a Total and Permanent Disability Cancellation Request for a federal student loan. These unsworn affidavits and documents were improperly submitted to this Court, and, under normal circumstances, this Court would not consider these submissions. Nonetheless, even if these documents were properly submitted, they would not affect the outcome.

This Court has the authority to order the Commissioner to review additional evidence on a showing that the new information is material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Gladney has not provided a legitimate explanation for either his failure to introduce these doctors' records and opinions at his original hearing or the delay in obtaining the student loan cancellation request, which was dated March 2001.

Even if Gladney could demonstrate good cause for failure to introduce this evidence at the 1999 ALJ hearing, he has not demonstrated that the evidence is material. His submissions include the names of certain doctors and clinics as well as statements that these doctors have diagnosed him with various ailments over the past two years. If Gladney has new ailments that have caused him to become disabled since 1999, he is free to refile for benefits. However, these new diagnoses do not help his claim that he was disabled from 1995 through 1999, the time period that is the subject of the instant motions.

Regarding the student loan cancellation, the doctor who signed the form stated that Gladney is 50% disabled and that it is "unknown at this time" whether he can ever engage in any form of employment. The standards for cancellation of a federal student loan due to disability are different than the standards for social security disability benefits and therefore this evidence is immaterial. In addition, this form does not indicate that the disability occurred prior to 1999, which is the time period at issue. Because these submissions are immaterial, even if the evidence had been properly introduced, it would fail to raise a genuine issue of material fact that the ALJ's decision was not based on substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is granted, and Gladney's motion for summary judgment is denied. Judgment is to be entered for the Commissioner on all counts. This is a final and appealable order. This case is terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: November 5, 2001